# EXHIBIT B

**AMENDED AND RESTATED BY-LAWS**

**OF**

**CENTRAL GROCERS, INC.**

*As Amended Effective November 3, 2012*

## Table of Contents

                                                                                                    **Page**

ARTICLE I          NAME..................................................................................................1

ARTICLE II         OFFICES.............................................................................................1

ARTICLE III        DEFINITIONS....................................................................................1

ARTICLE IV         MEETINGS OF SHAREHOLDERS..................................................4

        Section 1.      Annual Meeting .........................................................................4
        Section 2.      Special Meetings .......................................................................4
        Section 3.      Notice of Meetings....................................................................4
        Section 4.      Quorum......................................................................................4
        Section 5.      Record Date and Voting Lists...................................................5
        Section 6.      Proxies.......................................................................................5
        Section 7.      Voting of Shares by Certain Holders ........................................5
        Section 8.      Inspectors .................................................................................5

ARTICLE V          SHARES OF CAPITAL STOCK AND THEIR RIGHTS .............6

        Section 1.      Membership ..............................................................................6
        Section 2       Uncertificated Shares...............................................................7
        Section 3.      Transfer of Shares ....................................................................7
        Section 4.      Redemption of Class A Shares .................................................8
        Section 5.      Redemption of Class B Shares.................................................9
        Section 6.      Voting of Class B Shares by Board of Directors .....................13
        Section 7.      Lien on Shares..........................................................................14
        Section 8.      Annual Distributions of Class B Shares...................................14
        Section 9.      Capital Raising Sales of Class B Shares .................................14
        Section 10.     Stock Incentive Program..........................................................15

ARTICLE VI         DIRECTORS .......................................................................................18

        Section 1.      General Powers .........................................................................18
        Section 2.      Number and Qualifications .......................................................18
        Section 3.      Election and Term of Office......................................................18
        Section 4.      Vacancies..................................................................................18
        Section 5.      Resignation and Removal .........................................................19
        Section 6.      Chairman...................................................................................19
        Section 7.      Executive Committee ................................................................19
        Section 8.      Membership Committee.............................................................19
        Section 9.      Other Committees .....................................................................19
        Section 10.     Meetings of the Board...............................................................19
        Section 11.     Settlement Agreement...............................................................20

ARTICLE VII      OFFICERS ...............................................................................................20

    Section 1.      Officers and Terms of Office ...................................................20
    Section 2.      President....................................................................................21
    Section 3.      Vice Presidents.........................................................................21
    Section 4.      Secretary...................................................................................21
    Section 5.      Treasurer...................................................................................21

ARTICLE VIII     CORPORATE OBLIGATIONS AND FUNDS .........................................22

    Section 1.      Contracts ...................................................................................22
    Section 2.      Deposit and Withdrawal of Funds ...........................................22
    Section 3.      Loans.........................................................................................22

ARTICLE IX       INDEMNIFICATION.................................................................................22

    Section 1.      Indemnification Generally .......................................................22
    Section 2.      Actions By or In the Right of the Corporation ........................23
    Section 3.      Expenses ...................................................................................23
    Section 4.      Determination Regarding Standard of Conduct........................23
    Section 5.      Advancement of Expenses ........................................................23
    Section 6.      Rights Hereunder Not Exclusive ..............................................24
    Section 7.      Insurance...................................................................................24
    Section 8.      Report to Shareholders..............................................................24
    Section 9.      Interpretation............................................................................24

ARTICLE X        SEAL.........................................................................................................24

ARTICLE XI       FISCAL YEAR ..........................................................................................24

ARTICLE XII      RESERVES, PATRONAGE REBATES AND BUYING DEPOSIT
                     REQUIREMENT .......................................................................................25

    Section 1.      Reserves ....................................................................................25
    Section 2.      Patronage Rebates.....................................................................25
    Section 3.      Qualification for Patronage Rebates .........................................25
    Section 4.      Forms of Payment of Patronage Rebates ..................................26
    Section 5.      Application of Patronage Rebates to Indebtedness Owed
                     Corporation ...............................................................................26
    Section 6.      Reduction of Patronage Rebates in Proportion to Deficiencies in
                     Buying Deposits........................................................................27
    Section 7.      Special Provisions for Substantial Losses and Extraordinary
                     Income or Expense Items...........................................................27
    Section 8.      Cash Deposits; Buying Deposit Requirement...........................27
    Section 9.      Termination of Purchasing........................................................28
    Section 10.     Determination of Cash Available for Dividends and Redemptions..........28

ARTICLE XIII     RULES AND REGULATIONS .................................................................28

ARTICLE XIV     AMENDMENTS TO BY-LAWS......................................................................29

ARTICLE XV     VIOLATIONS BY SHAREHOLDERS OF THE BY-LAWS ........................29

# ARTICLE I

## NAME

The name of this corporation shall be Central Grocers, Inc. (the "Corporation").

# ARTICLE II

## OFFICES

The Corporation shall continuously maintain in the State of Illinois a registered office and a registered agent whose office is identical with such registered office, and may have other offices within or without the State of Illinois.

# ARTICLE III

## DEFINITIONS

The following terms, when used in these By-laws, shall have the following respective meanings:

"Applicable Federal Rate" means the interest rate determined by the Internal Revenue Service pursuant to Section 1274 of the Internal Revenue Code of 1986, as amended, as appropriate for the length of time in question.

"Associate Member" means any Person that has been accepted as an Associate Member of the Corporation in accordance with the provisions of Article V, Section 1 of these By-laws and owns five (5) Class A Shares.

"By-laws" means these Amended and Restated By-laws.

"Buying Deposit Requirement" means the minimum amount of Buying Deposits required of a Member, Patron or Customer pursuant to Section 8 of Article XII of these By-laws.

"Buying Deposits" means the sum of a Person's Cash Deposits and the Cash Basis in any Class B Shares owned by the Person.

"Cash Basis" means, with respect to Class B Shares, the amount paid by a Member for such shares or, if the shares were issued by the Corporation as a Patronage Rebate, the value given to such shares by the Corporation at the time of issuance.

"Cash Deposits" means the cash deposited with the Corporation by a Member, Patron or Customer for the purpose of purchasing products and services from the Corporation.

"Class A Share" means a share of the Corporation's Class A stock, par value $100 per share.

"Class B Share" means a share of the Corporation's Class B stock, no par value per share.

"Class B Purchase Price" means the fair market value per share of the Class B Shares on a non-marketability minority interest basis as of the end of the Corporation's fiscal year, as determined by a qualified valuation firm engaged by the Board of Directors for the purpose of determining such value.   For this purpose, the valuation firm shall apply a 33 1/3 % non-marketability and minority interest discount.  Notwithstanding anything to the contrary set forth in these By-laws, for all purposes, the Class B Purchase Price that is determined as of the end of the fiscal year ending July 31, 2008 shall also be the Class B Purchase Price as of the end of the fiscal year ending July 31, 2009.

"Customer" means a retailer that purchases products or services from the Corporation but is not a Member or Patron.

"Default Dividend and Redemption Amount" means, as of a given date, an amount equal to ten percent (10%) of the unused maximum borrowing capacity of the Corporation under its then-existing credit agreement.

"Good Standing" means Good Standing as defined in the Rules and Regulations.

"Member" means an Associate Member or a Regular Member.

"Options Grant" means an options award that entitles a Member to purchase a certain number or dollar value of Class B Shares, as specified in, and subject to, the provisions of Article V, Section 10 of these By-laws.

"Patron" means a retailer that has been accepted as and remains a Patron in accordance with the provisions related thereto in the Rules and Regulations, including those regarding minimum purchases from the Corporation.

"Patronage Rebate" means a distribution to a Member or Patron from Rebateable Net Income in accordance with the provisions of Section 2 of Article XII hereof and the provisions governing Patronage Rebates in the Rules and Regulations.

"Person" means an individual or an entity, including, but not limited to, a partnership, a corporation, a limited liability company or a trust.

"Qualified Estate Planning Entity" means a trust or other estate planning entity whose trust agreement or other governing documents (a) require that any Class B Shares held by the entity be voted by the Board of Directors of the Corporation, (b) provide that the entity may not Transfer any Class B Shares held by it, except back to the Person from which it previously received the shares, and then only if such Person, at the time of the Transfer back, is a Member, owns an interest in a Member, is controlled by or is under common control with a Member, or is a Corporation employee, and (c) provide that following any Transfer or attempted Transfer in violation of the preceding clause (b), the Corporation shall have the right to purchase the shares as provided in subsection 5(b)(ii) of Article V of these By-laws.  A trust or other estate planning entity shall be considered a Qualified Estate Planning Entity if its trust agreement or other governing documents contain the following provisions:

2

"Notwithstanding anything to the contrary set forth in this Agreement, all Class B Shares of Central Grocers, Inc. now or at any time hereafter held by the Trust, shall be voted by the Board of Directors of Central Grocers, Inc.  Notwithstanding anything to the contrary set forth in this Agreement, no Class B Shares of Central Grocers, Inc. now or at any time hereafter held by the Trust, may be Transferred, except back to the person or entity that previously Transferred the shares to the Trust, and then only if such person or entity, at the time of such Transfer back, is a member of Central Grocers, Inc. or owns an interest in such a member, is controlled by or is under common control with such a member, or is an employee of Central Grocers, Inc.  Following any Transfer or attempted Transfer in violation of the preceding sentence, Central Grocers, Inc. shall have the right to purchase the shares as provided in the by-laws of Central Grocers, Inc.  'Transfer', when used as a noun, means a sale, assignment, lease, gift, pledge, mortgage, hypothecation or other transfer, whether voluntary or involuntary and with or without consideration, and when used as a verb, in any of its forms, means to sell, assign, lease, give, pledge, mortgage, hypothecate or otherwise transfer, whether voluntarily or involuntarily and with or without consideration."

"Rebateable Net Income" means the Corporation's gross income from operations remaining after deducting all expenses (other than provision for federal income taxes), computed in accordance with the customs and practices of the Corporation and generally accepted accounting principles; provided, net gains resulting from the sale or exchange of tangible or intangible assets used in the Corporation's business (other than inventory) shall not be included in the Corporation's Rebateable Net Income.

"Regular Member" means any Person that has been accepted as a Regular Member of the Corporation in accordance with the provisions of Article V, Section 1 of these By-laws and owns five (5) Class A Shares.

"Related Group" means any group of Related Parties.

"Related Party" means, with respect to any Person, (a) any other Person directly, or indirectly through one or more entities, controlling, controlled by or under common control with such first Person, or (b) the spouse, parent, child or spouse of the child, of such Person, and any Person controlled by the spouse, parent, child or spouse of the child, of such Person, unless, in the case of any relation described in this clause (b), the Board of Directors of the Corporation determines that such Person and such other party are not operating a common enterprise with respect to any Retail Locations controlled by them.  For purposes of the foregoing definition, any of the following shall be deemed to constitute "control" of a Person:  (x) the ownership, or right to direct the vote, of a majority of the voting interests of the Person, and (y) the right to direct the management of the Person, whether by agreement, by virtue of holding the position of principal executive officer, principal manager or general partner of the Person, or otherwise.

"Retail Location" means a retail outlet that purchases from the Corporation a majority of such outlet's grocery and other goods for resale.

"Rules and Regulations" means the Rules and Regulations adopted and amended from time to time by the Board of Directors pursuant to Article XIII of these By-laws.

"Transfer," when used as a noun, means a sale, assignment, lease, gift, pledge, mortgage, hypothecation or other transfer, whether voluntary or involuntary and with or without consideration, and when used as a verb, in any of its forms, means to sell, assign, lease, give, pledge, mortgage, hypothecate or otherwise transfer, whether voluntarily or involuntarily and with or without consideration.

## ARTICLE IV

## MEETINGS OF SHAREHOLDERS

**Section 1.  Annual Meeting.**  An annual meeting of the shareholders shall be held each year at such place and on such date and at such time as may be designated in a resolution of the Board of Directors, for the purpose of electing directors and for the transaction of such other business as may come before the meeting.

**Section 2.  Special Meetings.**  Special meetings of the shareholders may be called by the President, by the Board of Directors or by the holders of not less than one-third (1/3) of the outstanding Class A Shares.  Any call for a special meeting shall be in writing and shall state the purpose or purposes of the proposed meeting and the time and place thereof.  Any special meeting may be held at the principal office of the Corporation or at such other place in the State of Illinois as shall be designated in the call of the meeting.  The business transacted at any special meeting shall be confined to the purposes stated in the call of the meeting.

**Section 3.  Notice of Meetings.**  Written notice of the time and place of the annual meeting and of any special meeting shall be mailed or personally delivered to each shareholder entitled to vote at such meeting not less than twenty (20) nor more than sixty (60) days prior to the date of the meeting.  If mailed, such notice shall be deemed to be delivered when deposited in the United States mail in a sealed envelope addressed to the shareholder at the shareholder's address as it appears on the records of the Corporation, with postage thereon prepaid.  Every shareholder shall furnish the Secretary with the shareholder's address at which notices of meetings and all other notices may be served upon or mailed to the shareholder.  Absent such notification, a notice of a meeting sent to the last known address of the shareholder shall be deemed adequate notice.

**Section 4. Quorum.**  A majority of the total votes that could be cast by the holders of all of the Class A Shares entitled to vote at a meeting of the shareholders (as determined in accordance with the Corporation's Articles of Incorporation), represented in person or by proxy, shall constitute a quorum for the transaction of business at such meeting by the holders of Class A Shares.  A majority of the outstanding Class B Shares of the Corporation entitled to vote at any meeting of the shareholders (as determined in accordance with the Corporation's Articles of Incorporation), represented in person or by proxy, shall constitute a quorum for the transaction of business at such meeting by the holders of Class B Shares.  In the absence of a quorum, the shareholders attending or represented at the time and place for such a meeting may adjourn the meeting from time to time, without notice other than announcement of the meeting, until a quorum shall be present.  At any such adjourned meeting at which a quorum shall be present, any

business may be transacted which might have been transacted at the meeting as originally scheduled.

**Section 5.   Record Date and Voting Lists.**   The Board of Directors shall have power to fix in advance a date as the record date for the determination of shareholders entitled to notice of or to vote at any meeting of shareholders, which date shall be not less than twenty (20) days nor more than sixty (60) days immediately preceding the meeting of shareholders.   If no such record date is fixed, the date on which notice of the meeting is mailed shall be the record date for such determination of shareholders.   A complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order and showing the address of each shareholder and the number of shares registered in the name of each shareholder, shall be prepared by the Secretary.   Such list shall be kept on file at the registered office of the Corporation and shall be subject to inspection by any shareholder at any time during usual business hours for a period of ten (10) days prior to the meeting, and the same shall also be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting.

**Section 6.   Proxies.**   At all meetings of shareholders at which a shareholder is entitled to vote on a matter, the shareholder may vote by proxy executed in writing by the shareholder or by such shareholder's duly authorized attorney-in-fact.   Such proxy shall be filed with the Secretary before or at the time of the meeting.   No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy.

**Section 7.   Voting of Shares by Certain Holders.**   Shares standing in the name of another corporation, domestic or foreign, may be voted by such officer, agent or proxy as the by-laws of such corporation may prescribe, or, in the absence of such provision, as the board of directors of such corporation may determine.

Shares standing in the name of a deceased person may be voted by his or her administrator or executor, either in person or by proxy.   Shares standing in the name of a court appointed guardian, or conservator, may be voted by such fiduciary, either in person or by proxy, without a transfer of such shares into his or her name.   Shares registered in the name of a trustee may be voted by such trustee, either in person or by proxy.

Shares standing in the name of a receiver may be voted by such receiver, and shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into the name of such receiver if authority so to do be contained in an appropriate order of the court by which such receiver was appointed.   Shares of its own stock belonging to the Corporation shall not be voted, directly or indirectly, at any meeting of shareholders and shall not be counted in determining the number of outstanding shares at any time.

**Section 8.   Inspectors.**   At any meeting of shareholders, the Chairman of the meeting may, or upon the request of any shareholder shall, appoint one or more persons as inspectors for such meeting.

Such inspectors shall ascertain and report the number of shares represented at the meeting, based upon their determination of the validity and effect of proxies; count all votes and

report the results; and do such other acts as are proper to conduct the election and voting with impartiality and fairness to all the shareholders.

Each report of an inspector shall be in writing and signed by him or her or by a majority of them if there be more than one inspector acting at such meeting. If there is more than one inspector, the report of a majority shall be the report of the inspectors. The report of the inspector or inspectors on the number of shares represented at the meeting and the results of the voting shall be prima facie evidence thereof.

## ARTICLE V

## SHARES OF CAPITAL STOCK AND THEIR RIGHTS

**Section 1. Membership.**

(a)     Regular Members and Associate Members.  In order to become a Member, a Person must own one or more Retail Locations that purchase goods and services from the Corporation having aggregate average purchases from the Corporation in excess of $60,000 per week (based on purchases during a one-year period) or such higher minimum amount as may be provided in the Rules and Regulations, and must complete a membership application that the Membership Committee of the Board of Directors or, if there is no such committee, the President of the Corporation, recommends for approval to the Board of Directors and the Board of Directors approves.  Any Member that became a Member before the effective date of these By-laws and any Member whose aggregate average purchases from the Corporation exceed $300,000 per week (based on purchases during a one-year period), and that owns at least one Retail Location whose aggregate average purchases from the Corporation exceed $60,000 per week (based on purchases during a one-year period), or in each case such higher minimum amounts as may be provided in the Rules and Regulations, shall be a Regular Member.  Any Member not qualifying as a Regular Member in accordance with the preceding sentence shall be an Associate Member.  An Associate Member whose aggregate average purchases per week and single Retail Location average purchases per week from the Corporation for any fiscal year exceed the minimums required for becoming a Regular Member may become a Regular Member if the Membership Committee of the Board of Directors (or, if there is no such committee, the President of the Corporation) so recommends to the Board of Directors and the Board of Directors approves.

(b)     Miscellaneous.  Neither the Membership Committee nor the President shall be obligated to accept any application to become a Member.  No more than one Person within any Related Group shall be permitted to be a Member, and for determining whether a Person that is part of a Related Group qualifies to become an Associate Member or a Regular Member, all of the purchases from the Corporation by the members of the Related Group shall be aggregated and a Retail Location owned by a Person within an applicant's Related Group shall be considered as owned by the applicant.  The Membership Committee of the Board of Directors or, if there is no such committee, the President of the Corporation, shall have complete discretion in determining whether a Person satisfies the minimum purchase requirements for becoming an Associate Member or a Regular Member.  Concurrently with becoming a Member, a Person

6

must purchase five (5) Class A Shares from the Corporation for a purchase price equal to the shares' par value.  As provided in the Corporation's Articles of Incorporation, Class A Shares may only be owned by Members and no Member may own more than five (5) Class A Shares.

**Section 2.   Uncertificated Shares.**  Class A Shares and Class B Shares shall be uncertificated and ownership thereof shall be recorded in the books and records of the Corporation.  The Corporation's record of share ownership shall be prima facie evidence of the identities and share holdings of the Corporation's shareholders.  The Corporation shall act as its own transfer agent for all Class A Shares and Class B Shares.

**Section 3.  Transfer of Shares.**

(a)   <u>Class A Shares</u>.  Class A Shares may not be Transferred, except for a Transfer to the Corporation pursuant to a redemption under Section 4 below.  Control of an entity that holds Class A Shares may not be Transferred.

(b)   <u>Class B Shares</u>.  Class B Shares may not be Transferred, except:  (i) to any Person that (A) controls, is controlled by or is under common control with, the Transferring holder or (B) is a Qualified Estate Planning Entity for the benefit of the Transferring holder, the spouse of the Transferring holder and/or the lineal descendants of the Transferring holder, and prior to the Transfer, counsel to the Corporation approve the entity's trust agreement or other governing documents as meeting the requirements for being a Qualified Estate Planning Entity, <u>provided</u>, that in the case of (A) or (B) the Transferring holder is free of indebtedness to the Corporation and all of the Class B Shares of the Transferring holder are Transferred to such Person in the Transfer; (ii) to the Corporation pursuant to a redemption under Section 5 below; (iii) to Persons owning the interests of a Member that holds Class B Shares pursuant to subsection 3(c) below; or (iv) if the Transferring holder is a trust or other estate planning entity, to the Person that previously Transferred the shares to the trust or other entity, if permitted by subsection 3(d) below.  Any Person that Transfers Class B Shares to a Qualified Estate Planning Entity pursuant to clause (i)(B) of this subsection (b) shall thereafter be required to Transfer to the same Qualified Estate Planning Entity any additional Class B Shares that such Person receives from time to time, within thirty (30) days after such shares are received, until the Qualified Estate Planning Entity is no longer the holder of any Class B Shares.  Control of an entity that holds Class B Shares may not be Transferred, except to (x) the spouse and/or lineal descendants of any individual who had control of such entity prior to the Transfer, or (y) a trust or other estate planning entity for the benefit of the spouse and/or lineal descendants of any individual who had control of such entity prior to the Transfer.

(c)   <u>Transfers of Class B Shares to Owners of Member</u>.  If a Member that holds Class B Shares is free of indebtedness to the Corporation, the Member may Transfer to any owner of ownership interests in the Member, a number of Class B Shares equal to such owner's ownership percentage in the Member multiplied by the total number of Class B Shares held by the Member.

(d)   <u>Transfers of Class B Shares by Trusts</u>.  Any trust or other estate planning entity that holds Class B Shares may Transfer such shares back to the Person from which it previously received the shares, provided that (i) such Person, at the time of such Transfer back, is a Member, owns an interest in a Member, is controlled by or is under common control with a

7

Member, or is a Corporation employee, and (ii) all of the Class B Shares held by such trust or other estate planning entity are included in such Transfer back.

(e)    <u>Notice Requirement</u>.  Each holder of Class A Shares or Class B Shares shall notify the Corporation of any Transfer or attempted Transfer of any of the Class A Shares or Class B Shares held by the holder and of any Transfer or attempted Transfer of control of the holder.  Such notice must be provided to the Corporation no later than 30 days after the date of the Transfer or attempted Transfer.

(f)    <u>"Control"; Void Transfers</u>.  As used in this Section 3, "control" of an entity means ultimate control of a majority of the voting interests of the entity, including by means of ownership of the voting interests of one or more entities in a chain of ownership.  Any Transfer of a Class A Share or a Class B Share in violation of this Section 3 shall be void.

### Section 4.  Redemption of Class A Shares.

(a)    <u>Good Standing and Member Status; Compliance with Articles and By-laws; Other Matters</u>.  In the event that any Member (i) is not in Good Standing, (ii) violates any provision of the Articles of Incorporation, these By-laws or the Rules and Regulations, or (iii) ceases to qualify for Member status pursuant to the provisions related thereto in the Rules and Regulations, the Corporation shall, upon becoming aware of such circumstances described in clauses (i), (ii) or (iii), promptly provide written notice to the Member stating such circumstances.  In the case of a Member that is not in Good Standing or has violated the Articles of Incorporation, these By-laws or the Rules and Regulations, the Corporation shall have the right to purchase the Class A Shares of the Member if, sixty (60) days after notice was given to the Member, the Member is still not in Good Standing or the violation is uncured.  Such right may be exercised by the Corporation at any time following such sixty (60) days.  If the Corporation exercises its right to purchase the shares, the Member shall be obligated to sell the shares to the Corporation.  In the case of a Member that ceases to qualify for Member status, the Corporation shall purchase (and the Member shall sell to the Corporation) the Member's Class A Shares when sixty (60) days have elapsed following the giving of notice to the Member if the Member at that time continues not to qualify to be a Member.

(b)    <u>Purchase Price and Other Matters</u>.  The purchase price for any Class A Shares purchased pursuant to this Section 4 shall be the shares' par value.  Any purchase of Class A Shares pursuant to this Section 4 shall be effective upon the Corporation's giving of written notice to the Member of the purchase and payment of the purchase price to the Member.  The Corporation shall be entitled to offset from such payment indebtedness owed by the Member to the Corporation.  Each Class A Share purchased by the Corporation from a Member shall become a treasury share that may be issued to a new Member.

**Section 5.  Redemption of Class B Shares.**

(a)     <u>Redemption Policy Generally</u>.

(i)     Current Members in Good Standing, former Members, and current and former employees, shall be entitled to request that the Corporation redeem Class B Shares held by them in accordance with the terms of this subsection 5(a).  Each such entity or individual entitled to request the redemption of Class B Shares is referred to in this Section 5 as an "Eligible Redemption Participant."

(ii)     Each year, promptly following the determination of the Class B Purchase Price as of the end of the immediately preceding fiscal year, the Board of Directors shall cause written notice to be sent to all Eligible Redemption Participants notifying them of the Class B Purchase Price and of their right to request the redemption of Class B Shares in accordance with this subsection 5(a).  In order to request redemption of Class B Shares pursuant to this subsection 5(a), an Eligible Redemption Participant shall be required to provide written notice to the Corporation indicating the number of Class B Shares that the Eligible Redemption Participant requests that the Corporation redeem.  Such notice must be received by the Corporation no later than sixty (60) days after the date of the Corporation's notice to Eligible Redemption Participants.

(iii)     The Corporation shall redeem all shares timely requested by Eligible Redemption Participants to be redeemed in accordance with the foregoing subsection (ii); <u>provided</u>, <u>however</u>, in the event that the amount of Corporation cash determined by the Board of Directors under Section 10 of Article XII hereof to be available for the redemption of shares, after subtracting therefrom amounts required by the Corporation for servicing obligations under promissory notes issued previously for the redemption of Class B Shares, is insufficient to redeem all of the shares so requested to be redeemed, the Corporation shall redeem shares on a pro rata basis in accordance with the respective numbers of shares that the Eligible Redemption Participants have requested be redeemed.

(iv)     Redemptions pursuant to this subsection 5(a) shall be in cash and shall occur (and all proceeds of redemption shall be paid) no later than February 1st of each year.

(v)     In the event that any redemption of shares of a current Member would cause the Member's Buying Deposits to be less than the Member's Buying Deposit Requirement, the Corporation shall retain from the redemption proceeds otherwise payable to the Member an amount equal to the shortfall from the Member's Buying Deposit Requirement.  Such amount retained by the Corporation shall be applied to the Member's Cash Deposits.

(b)     <u>Corporation's Right to Redeem in Certain Circumstances</u>.

(i)     In the event that any Member (A) is not in Good Standing, (B) violates any provision of the Articles of Incorporation, these By-laws or the Rules and Regulations, or (C) although not selling or closing all of its Retail Locations, terminates its purchasing from the Corporation without complying with Section 9 of Article XII

9

hereof, the Corporation shall, upon becoming aware of such circumstances described in clauses (A), (B) or (C), promptly provide written notice to the Member stating such circumstances.  The Corporation shall have the right to purchase the Class B Shares of the Member if, sixty (60) days after notice was given to the Member, the Member is still not in Good Standing, the violation is uncured, or the Member has not by that time resumed its purchasing from the Corporation, as applicable.  Such right may be exercised by the Corporation at any time following such sixty (60) days.  The Member shall sell the Member's Class B Shares to the Corporation if the Corporation exercises its right to purchase the shares.

(ii)     In the event that any trust or other estate planning entity that holds Class B Shares Transfers any of such shares other than as permitted by subsection 3(d) of this Article V, the Corporation shall have the right, but not the obligation, to purchase the Transferred shares from any recipient of the shares, if the recipient has not Transferred the recipient's Transferred shares back to the trust or other entity from which the recipient received the shares within sixty (60) days after the recipient receives written notice from the Corporation that the Corporation intends to exercise its rights under this subsection 5(b)(ii).   Each recipient shall be obligated to sell such shares to the Corporation if the Corporation exercises its right to purchase the shares.

(iii)    The per-share purchase price for any Class B Shares purchased pursuant to this subsection (b) shall be the Class B Purchase Price determined as of the end of the Corporation's most recently ended fiscal year at the time of the Corporation's written notice to the holder.  In the case of a purchase pursuant to subsection (i) above, the Corporation shall pay the purchase price for the shares by paying the Member at the time of the purchase a cash amount equal to the Member's Cash Basis in its Class B Shares and by issuing a promissory note having the terms described in subsection 5(e) to the Member in a principal amount equal to the difference between such Cash Basis and the total purchase price for the shares.  Any purchase pursuant to subsection (i) shall be effective upon the Corporation's giving of written notice to the Member of the purchase and payment to the Member of the cash portion of the purchase price and delivery to the Member of the promissory note.  In the case of a purchase pursuant to subsection (ii) above, the Corporation shall pay the purchase price by issuing to the seller a promissory note having the terms described in subsection 5(e) in the amount of the purchase price.  Any purchase pursuant to subsection (ii) shall be effective upon the Corporation's giving of written notice to the seller of the purchase and delivery to the seller of the promissory note.

(c)     <u>Redemption or Transfer to Trust Upon Termination of Membership or Employment</u>.

(i)     In the event that any holder of Class B Shares, other than a Corporation employee or a trust or other estate planning entity, ceases either (A) to be a Member or (B) to own an interest in a Member or be controlled by or be under common control with, a Member, in each case whether by reason of death, retirement, sale or termination of business or otherwise, then the holder shall be required to elect to sell the holder's Class B Shares to the Corporation or Transfer such shares to a Qualified Estate Planning Entity,

as provided in subsection (iv) below.  The date that such a holder of Class B Shares ceases to be a Member or to control, be controlled by or be under common control with, a Member, is referred to herein as such holder's "Triggering Date".

(ii)       In the case of any employee who holds Class B Shares, following the termination of the employee's employment with the Corporation, except for the circumstances described in subsection 5(d) below and except for any employee whose employment terminates prior to the effective date of these By-laws, the employee shall be required to elect to sell the employee's Class B Shares to the Corporation or Transfer such shares to a Qualified Estate Planning Entity, as provided in subsection (iv) below. The date of termination of the employee's employment with the Corporation is referred to herein as the employee's "Triggering Date".

(iii)       In the case of any holder of Class B Shares that is a trust or other estate planning entity that is not a Qualified Estate Planning Entity, in the event that the Person that Transferred such shares to the trust or other entity ceases (A) to be a Member, (B) to be an employee of the Corporation, or (C) to directly or indirectly own an interest in a Member, in each case whether by reason of death, retirement, sale or termination of business or otherwise, then the holder shall be required to elect to sell the holder's Class B Shares to the Corporation, Transfer such shares to a Qualified Estate Planning Entity, or procure the amendment of the trust or other entity's governing documents so that it will be a Qualified Estate Planning Entity, in each case as provided in subsection (iv) below.  The date that the Person that Transferred such shares to the trust or other entity ceases to be a Member or to directly or indirectly own an interest in a Member, is referred to herein as the trust or other entity's "Triggering Date".

(iv)       Each sale of a holder's Class B Shares to the Corporation, Transfer of such shares to a Qualified Estate Planning Entity or amendment of trust or other entity governing documents required by this subsection 5(c), shall occur no later than one (1) year after the holder's Triggering Date.  At any time prior to the date that is one (1) year after the holder's Triggering Date, the holder may:

(A)       tender the shares to the Corporation by providing written notice to the Corporation indicating the desired effective date of the purchase;

(B)       provide evidence to the Corporation that the holder has Transferred the holder's Class B Shares to a Qualified Estate Planning Entity meeting the requirements of subsection (v) below; or

(C)       if the holder is a trust or other estate planning entity that is not a Qualified Estate Planning Entity, provide evidence to the Corporation that such trust or other entity's governing documents have been amended so that they meet the requirements for being a Qualified Estate Planning Entity and the other requirements of subsection (v) below.

If the holder fails to do any of (A), (B) or (C) above by the date which is one (1) year after the holder's Triggering Date, the Corporation shall purchase the holder's Class B

Shares promptly following the expiration of such one (1) year period. The per-share purchase price for any Class B Shares purchased by the Corporation pursuant to this subsection 5(c) shall be the Class B Purchase Price determined as of the end of the Corporation's most recently ended fiscal year at the time of the purchase. The Corporation shall pay the purchase price by issuing a promissory note having the terms described in subsection 5(e).

      (v)    In order for a Qualified Estate Planning Entity to qualify under subsections (iv)(B) and (C) above, the following requirements must be satisfied:

      (A)    the Qualified Estate Planning Entity must be for the benefit of the Transferring holder, the spouse of the Transferring holder and/or lineal descendants of the Transferring holder (or in the case of a Transferring holder that is a trust or other estate planning entity, the Qualified Estate Planning Entity must be for the benefit of the original Transferor of the Class B Shares to such holder, the spouse of such original Transferor and/or lineal descendants of such original Transferor); and

      (B)    prior to the Transfer, counsel to the Corporation must review and approve the entity's trust agreement or other governing documents as meeting the requirements for being a Qualified Estate Planning Entity.

      (d)    <u>Employees Terminated for Cause and Employees in Violation of Employment Agreements</u>. In the event that either an employee's employment with the Corporation is terminated by the Corporation for cause, or an employee whose employment has terminated is in violation of any provision of his employment agreement with the Corporation, including but not limited to covenants not to compete, the Corporation shall have the right (but not the obligation), exercisable at any time thereafter, to redeem the employee's Class B Shares at a price equal to the employee's Cash Basis in the shares. The Corporation may pay the purchase price in a cash lump sum or by issuing a promissory note having the terms described in subsection 5(e).

      (e)    <u>Promissory Notes</u>. Each promissory note issued by the Corporation in payment for Class B Shares shall have a term of five (5) years and shall provide for five equal annual payments of principal and interest at the Applicable Federal Rate. Each such promissory note shall also include a provision allowing the Corporation to suspend payments of principal if the Board of Directors determines that such suspension is in the best interests of the Corporation. Each promissory note shall also provide that notwithstanding any such suspensions of principal payments, all principal and accrued interest shall be repaid no later than ten (10) years following the issuance of the note. Any suspension of principal payments shall be applied to all outstanding promissory notes issued in payment for Class B Shares. A decision to suspend payments of principal shall require the affirmative vote of two-thirds of the members of the Board of Directors.

      (f)    <u>Offset of Indebtedness from Redemption Proceeds</u>. The Corporation shall be entitled to offset from the redemption proceeds payable to any holder of Class B Shares any indebtedness that the holder of the redeemed shares owes the Corporation that is past due.

(g)     Treasury Shares.  Each Class B Share purchased by the Corporation shall become a treasury share that may be reissued.

(h)     Restrictions on Redemptions.  Notwithstanding anything to the contrary set forth in these By-laws, the Corporation shall not be required to redeem any shares of stock of the Corporation if doing so would cause a default under the terms of any agreement to which the Corporation is a party, including but not limited to any agreement with a lender to the Corporation.

(i)     Special Redemption in 2012.

(i)     The Corporation shall, if determined by the Board of Directors of the Corporation by a two-thirds (2/3) majority vote, make a special offer to redeem in calendar year 2012 Class B Shares held by Eligible Redemption Participants, in accordance with the terms of this subsection 5(i).  If the Board of Directors determines to have the Corporation redeem shares pursuant to this subsection 5(i), the Board of Directors shall determine the price per share to be paid in such redemption and the amount of Corporation cash available for use in the redemption.  For the avoidance of doubt, the Board of Directors may determine a price that is equal to or greater than the Class B Purchase Price; provided, however, a determination of a price greater than the Class B Purchase Price shall require a two-thirds (2/3) majority vote.  Any offer to redeem pursuant to this subsection 5(i) shall be made in writing to all Eligible Redemption Participants on the same terms.  Any such offer shall state the price per share being offered, the amount of Corporation cash available for use in the redemption and the date by which Eligible Redemption Participants desiring to participate in such redemption shall be required to provide written notice to the Corporation stating the number of shares that they request be redeemed.  The Corporation shall redeem all Class B Shares timely requested by Eligible Redemption Participants to be redeemed; provided, however, in the event that the amount of Corporation cash determined by the Board of Directors to be available for use in the redemption is insufficient to redeem all of the shares so requested to be redeemed, the Corporation shall redeem shares on a pro rata basis in accordance with the respective numbers of shares that the Eligible Redemption Participants have requested be redeemed.  Any redemptions pursuant to this subsection 5(i) shall be in cash and shall occur no later than December 31, 2012.

(ii)     Any redemptions pursuant to this subsection 5(i) shall be in addition to, and not in substitution of, any redemptions that the Corporation may otherwise make in accordance with the provisions of these By-laws.  Notwithstanding the provisions of Article XII, Section 10 hereof, the funds used by the Corporation in making any redemptions pursuant to this subsection 5(i) shall not count against the amount to be determined by the Board of Directors at its December 2012 regular meeting to be available for redemptions during the fiscal year ending August 3, 2013.

**Section 6.   Voting of Class B Shares by Board of Directors.**  In the event the Corporation's Board of Directors is given the power to vote any Class B Shares under the governing documents of trusts or other estate planning entities, the Board shall, on any matter to be voted on, vote all of such shares in a manner identical to the manner in which the voting

holders of Class B Shares have voted their shares (for this purpose counting all abstentions as non-votes). By way of illustration, if there are 800,000 Class B Shares outstanding, and the Board has the power to vote 200,000 of such shares, and on a particular matter 300,000 shares have been voted "for", 200,000 have been voted "against" and 100,000 have abstained or not been voted, the Board shall vote 120,000 shares "for" and 80,000 shares "against".

**Section 7.   Lien on Shares.**   Each shareholder of the Corporation, by accepting the Class A Shares or Class B Shares issued to the shareholder, grants the Corporation a perfected, first-priority security interest in all of such shares, as security for the payment, from time to time and as often as may become due and payable, of any and all indebtedness of any nature payable to the Corporation by the holder. Each such share shall be deemed continuously and irrevocably pledged by the holder thereof to the Corporation. The Corporation reserves the right to pursue any and all means that are available to the Corporation to collect overdue obligations of a Member, Patron or Customer, including but not limited to, foreclosing on the Corporation's security interests in Class A Shares, Class B Shares and Cash Deposits.

**Section 8.   Annual Distributions of Class B Shares.**   The Corporation shall pay at least ten percent (10%) of Members' Patronage Rebates each year in the form of Class B Shares, pursuant to Section 4 of Article XII hereof. The Board of Directors may determine to pay more than ten percent (10%) of Members' Patronage Rebates each year in the form of Class B Shares.

**Section 9.   Capital Raising Sales of Class B Shares.**   The Board of Directors may elect, upon the advice of management, bankers, accountants and other financial advisors, to offer additional Class B Shares to all holders Class A Shares in order to increase the capitalization of the Corporation. If so elected by the Board of Directors, the Corporation shall provide written notice of the offer to all of the holders of Class A Shares. The purchase price for the offered Class B Shares shall be the most recently determined Class B Purchase Price. Each holder of Class A Shares shall be entitled to purchase the holder's pro rata share of the offered Class B Shares based on all such holders' existing relative holdings of Class B Shares. Holders of Class A Shares desiring to participate in the offering shall be required to provide the Corporation with written notice of the number of shares that they are willing to purchase no later than twenty (20) days prior to the date of the closing of the offering as specified in the Corporation's notice. The Corporation shall then offer any remaining offered shares to the participating purchasers on a pro rata basis based on such purchasers' relative purchases from the Corporation in the most recently ended fiscal year. Participating purchasers desiring to purchase additional shares offered to them shall be required to provide the Corporation with written notice of the number of shares that they are willing to purchase no later than ten (10) days prior to the date of the closing of the offering as specified in the Corporation's notice. The Corporation shall then permit any remaining offered shares to be purchased by those members that have elected to purchase all of the shares offered to them in the initial and the second offering, in such portions as may be agreed among them. The Corporation shall promptly notify each such holder of the opportunity to purchase additional shares and shall attempt to facilitate an agreement among all of such holders regarding the respective portions of the additional shares to be purchased by them. At the closing of the offering, each participating purchaser shall be required to pay the aggregate purchase price for the shares being purchased by it in cash.

14

### Section 10.  Stock Incentive Program.

(a)     Qualification for Options Grants.  During the first or second quarter of the fiscal year beginning July 29, 2012, and during the first quarter of each fiscal year thereafter, the Corporation shall make an Options Grant to each Member satisfying both of the following requirements:

(i)     The Member must be in Good Standing.

(ii)     The Member's purchases from the Corporation during the immediately preceding fiscal year (the "Base Year") must satisfy the following test:  The Member's average weekly purchases during the Base Year, when multiplied by 2, must be greater than 110% of the Member's Cash Basis in Class B Shares as of the last day of the Base Year, excluding for this purpose the Member's Cash Basis in any Class B Shares that were ever received as part of a Patronage Rebate.

If a Member is not in Good Standing, the Corporation shall provide the Member with written notice specifying why the Member is not in Good Standing, and the Member shall have sixty (60) days in which to bring itself into Good Standing.  If the Member is not in Good Standing sixty (60) days after written notice is provided to the Member, the Member shall not be entitled to receive any Options Grant that the Member would otherwise be entitled to receive with respect to the preceding fiscal year.

(b)     Purchase Price Under Options Grants.  The purchase price of shares under each Options Grant shall be fixed at the Class B Purchase Price determined as of the end of the Base Year.

(c)     Number of Shares Purchasable Under Options Grants.  Subject to any reduction or termination under subsection 10(d) or (e) below, the total number of shares purchasable under any Options Grant shall be equal to the quotient of (i) the Member's average weekly purchases during the Base Year, multiplied by 2, minus the Member's Cash Basis in Class B Shares as of the last day of the Base Year (excluding for this purpose the Member's Cash Basis in any Class B Shares that were ever received as part of a Patronage Rebate), divided by (ii) the Class B Purchase Price as of the end of the Base Year.

(d)     Vesting.

(i)     The options provided for in each Options Grant shall grant the Member the right to purchase Class B Shares as provided in this Section 10, and shall become vested in accordance with one of the following three vesting schedules, as elected by the Member.  The Member may elect one of the following vesting schedules by providing written notice to the Corporation within twenty (20) days following the Corporation's notice to the Member that the Member is entitled to receive the Options Grant:  (A) the Member's rights to purchase shares shall vest over a five (5) year period at the rate of 20% per year, beginning with the year in which the Options Grant is awarded, (B) 50% of the Member's rights to purchase shares shall vest in the year in which the Options Grant is awarded and the remaining 50% of the Member's rights to purchase shares shall vest in the immediately following year, or (C) 100% of the Member's rights to purchase shares

shall vest in the year in which the Options Grant is awarded. If any Member fails to provide such written notice to the Corporation within such twenty (20) day period, the Member shall be deemed to have elected the vesting schedule described in clause (A) of the preceding sentence. Vested options shall be exercisable each fiscal year only during the sixty (60) day period immediately following the date the Corporation makes that year's Options Grants or such other date that the Corporation may determine and notify the Members of in writing. If any portion of an Options Grant becomes vested during a fiscal year but is not exercised during such sixty (60) day period, that portion of the Options Grant and any remaining portion of the Options Grant shall be deemed terminated and may not be exercised in the future.

(ii)     Notwithstanding anything to the contrary set forth in these By-laws, any holder of unvested options provided for in any Options Grant that is outstanding as of the date the Corporation's shareholders approved the amendments to the By-laws amending this Section 10, shall have the right to elect to have all of such holder's unvested options vest immediately, effective as of a date to be determined by the Board of Directors and stated in a written notice provided to all of such holders by the Corporation notifying them of their right to elect immediate vesting as provided for in this subsection (ii). Any such holder shall be permitted to make such election by providing written notice thereof to the Corporation within ten (10) days following the date of such notice by the Corporation. Any such holder who does not provide such written notice to the Corporation within such ten (10) day period, shall be deemed not to have elected the immediate vesting provided for in this subsection (ii). If a holder elects such immediate vesting, the holder shall be required to purchase all of the shares purchasable under all of the holder's Options Grants within a ten (10) day exercise period immediately following such vesting, and if the holder fails to purchase any of such shares, the holder's rights to purchase the unpurchased shares shall terminate and no unexercised portion of any of such Options Grants may be exercised in the future. If a holder does not elect the immediate vesting provided for in this subsection (ii), the holder's Options Grants that are outstanding as of the date the Corporation's shareholders approved the amendments to the By-laws amending this Section 10, shall continue to vest and become exercisable at the rate of 20% per year during whatever remains of the respective five (5) year terms of such Options Grants, and if any portion of an Options Grant becomes vested during a fiscal year but is not exercised during such year's sixty (60) day exercise period, that portion of the Options Grant and any remaining portion of the Options Grant shall be deemed terminated and may not be exercised in the future.

(e)     Reduced Purchases. If during the year that an Options Grant is awarded or during any of the four years following such year, a Member's annual purchases with the Corporation are less than 90% of the Member's purchases with the Corporation during an Options Grant's Base Year, the number of shares purchasable under the Options Grant during each of the years remaining under the Options Grant following the year of the purchases shortfall, shall be reduced by a number equal to (1) the difference between the total number of shares purchasable under the Options Grant as originally awarded and the total number of shares that would have been purchasable under the Options Grant had the Member's purchases in the Base Year been the Member's purchases in the year of the purchases shortfall, divided by (2) the number of such remaining years. Notwithstanding the foregoing, to the extent that the reduction in purchasable

shares required by this subsection (e) is greater than the remaining number of shares purchasable under an Options Grant and the Member has previously purchased shares under such Options Grant, the Corporation shall have the right, but not the obligation, to purchase from the Member such number of Class B Shares that is equal to the number of shares by which the reduction in purchasable shares required by this subsection (e) exceeds the remaining number of shares purchasable under an Options Grant; provided, however, that such number of shares that the Corporation has the right to purchase shall not exceed the number of shares previously purchased by the Member under such Options Grant; and provided, further, the Corporation shall not have the right to repurchase any shares that were purchased pursuant to any Options Grant that was outstanding as of the date the Corporation's shareholders approved the amendments to the By-laws amending this Section 10, except to the extent that such shares were purchased by the Member as a result of accelerated vesting elected by the Member under Section 10(d)(ii) above. The purchase price payable by the Corporation in any such repurchase shall be the exercise price that was paid by the Member for the shares.

(f)     Determination of Shares Owned.  For purposes of determining whether a Member qualifies for an Options Grant under subsection 10(a) in any year, the Member shall be considered as owning all shares, or the value of all shares, originally purchasable pursuant to Options Grants previously awarded to the Member, regardless of whether the options have vested yet and regardless of whether any portion of the options have been reduced or terminated under subsections 10(d) or (e).

(g)     Non-Transferability of Options Grants; Termination of Options Grants Upon Sale of Corporation; Transfer or Closure of All Retail Locations.  No Member may transfer any portion of the options under any Options Grant.  Upon any sale of the Corporation, all Members' unexercised options under any Options Grants shall terminate. Upon the Transfer or closure of all of a Member's Retail Locations, all of the Member's unexercised options under any Options Grants shall terminate, and, if the number of shares previously purchased by the Member under any Options Grant awarded within five (5) years prior to the date of such Transfer or closure, exceeds the product obtained by multiplying (i) 20% of the total number of shares that were originally purchasable under such Options Grant, by (ii) the number of annual option exercise periods under subsection (d) above that have occurred since the awarding of the Options Grant, then the Corporation shall have the right, but not the obligation, to purchase from the Member such excess number of Class B Shares.  The purchase price payable by the Corporation in any such repurchase shall be the exercise price that was paid by the Member for the shares.

(h)     Determination of Members' Purchases.  In determining a Member's purchases for purposes of the tests and calculations under this Section 10, only purchases for Retail Locations of a Member that were open for at least six months shall be included, and purchases for Retail Locations of the Member that were open more than six months but less than one year shall be annualized.

# ARTICLE VI

## DIRECTORS

**Section 1.   General Powers.**   The business and affairs of the Corporation shall be managed by or under the direction of its Board of Directors.

**Section 2.   Number and Qualifications.**   The number of directors of the Corporation shall be at least ten (10) but not more than fifteen (15), as determined from time to time by the Board of Directors; provided, however, that until the November 2008 annual meeting of shareholders, the number of directors of the Corporation shall be twelve (12).  No person may be elected as a director of the Corporation unless (a) he or she is a holder of Class A Shares and is in Good Standing, or is an executive officer, partner or general manager of an entity that is a holder of Class A Shares and is in Good Standing, and (b) except in the case of a director elected to fill a vacancy in accordance with Section 4 of this Article VI, such person has been nominated to be elected as a director by an officer or director of the Corporation or a holder of Class A Shares.  In addition, no more than one member of a Related Group or one officer, director or employee of a member of a Related Group may serve as a director of the Corporation at the same time.  All nominations for director must be in writing and must be submitted to the Secretary of the Corporation no later than sixty (60) days before the shareholders meeting at which the nominee is to be elected.

**Section 3.   Election and Term of Office.**

(a)      The directors of the Corporation shall be divided into three (3) classes, each consisting of the same number of directors as each other class, or as near as possible to the same number of directors if the total number of directors is not evenly divisible by three (3).  Each director of each class shall serve for a term of three (3) years or until his or her successor has been duly elected and qualified.  The directors of each class shall be elected at the third succeeding annual meeting of shareholders following the meeting at which such directors were elected.  Only one class of directors shall be elected at each annual meeting of shareholders.

(b)      For so long as the Settlement Agreement dated February 9, 2006, among the Corporation and certain other parties, remains effective, a Nominating Committee of the Board of Directors appointed in accordance with Section 5 of such agreement may nominate a candidate for each directorship becoming vacant when the term of a director expires.

**Section 4.   Vacancies.**   Any vacancy occurring in the Board of Directors, whether by reason of death, resignation, removal, inability or refusal to act or otherwise, may be filled by the appointment of a new director by a majority of the Board of Directors; provided, however, that such appointment must be ratified by a majority of the holders of Class A Shares at the next annual meeting of shareholders.  If a majority of the Board of Directors is unable to agree on an appointment to fill a vacancy, the Board of Directors shall thereupon call a special meeting of shareholders to be held as soon as practicable for the purpose of electing a director to fill the vacancy.  Every director appointed or elected to fill a vacancy shall hold office for the remainder of the term of the director whose position was vacated or until his or her successor shall have been duly elected and qualified.

**Section 5.   Resignation and Removal.**   A director of the Corporation may resign at any time upon written notice to the Board of Directors.   A director may be removed with or without cause by a vote of two-thirds (2/3) of the total votes that could be cast by the holders of all of the outstanding Class A Shares (as determined in accordance with the Corporation's Articles of Incorporation), provided that the notice of the meeting of shareholders at which removal is voted upon names the director or directors to be removed at the meeting.

**Section 6.   Chairman.**   A majority of the directors of the Corporation may annually appoint a Chairman of the Board of Directors (the "Chairman").   The Chairman shall be a holder of Class A Shares or an executive officer, partner or general manager of such a shareholder, but need not be a director of the Corporation.   If the Chairman is not a director of the Corporation, he or she shall not become a director by virtue of his or her status as Chairman and shall not be entitled to vote as a director on any matter.   If the Chairman is a director of the Corporation, his or her status as a director shall not be affected by also serving as Chairman and he or she shall be entitled to vote as a director on any matter.   The Chairman shall preside at and conduct meetings of the Board of Directors and meetings of shareholders, and shall perform such other duties as the Board of Directors may direct.   The Board of Directors may fix a salary of the Chairman for such services as may be outlined by the Board of Directors at the time of the Chairman's appointment and pay such salary from the funds of the Corporation.

**Section 7.   Executive Committee.**   The Board of Directors shall elect an Executive Committee consisting of such number of its members as it deems advisable.   The Executive Committee shall be a part of the permanent executive organization of the Corporation and shall, in the interim between meetings of the Board of Directors, exercise all powers of the Board of Directors, except to the extent that the powers of the Executive Committee may be limited from time to time by the Board of Directors or may be limited by unwaivable provisions of the Illinois Business Corporation Act.   All of the members of the Executive Committee shall be duly notified of meetings of the committee and a majority of its members shall constitute a quorum.

**Section 8.   Membership Committee.**   The Board of Directors may appoint a Membership Committee consisting of not less than three of its members, which committee shall review applications to become a Member of the Corporation and make recommendations to the Board of Directors regarding the approval or denial of such applications.   All of the members of the Membership Committee shall be duly notified of meetings of the committee and a majority of its members shall constitute a quorum.

**Section 9.   Other Committees.**   The Board of Directors may appoint such other committees consisting of one or more of its members as it may from time to time deem advisable.   Any committees so appointed shall observe such rules for their conduct and keep such records as the Board of Directors may determine.   A majority of any committee shall constitute a quorum.

**Section 10.   Meetings of the Board.**

(a)   <u>Regular Meetings</u>.   A regular meeting of the newly elected Board of Directors may be held without call or formal notice immediately after the annual meeting of shareholders. At such meeting the Board shall immediately proceed to the election of officers of the

19

Corporation for the ensuing year and to transact any other corporate business as may properly come before the Board.  The Board of Directors may also provide by resolution for the holding of additional regular meetings of the Board of Directors at such time and place as shall be set forth in such resolution.  No notice of regular meetings shall be required.

(b)      Special Meetings.  Special meetings of the Board of Directors shall be held whenever called by the President or by any three (3) of the directors.  The Secretary shall give written notice of each special meeting by mailing the same at least five (5) days prior to the day of the meeting to each director at the director's last known mailing address or by telephoning the director at least two (2) days prior to the day of the meeting.  Such notice may be waived by any director.  The attendance of a director at any meeting shall constitute a waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened.

(c)      Place of Meetings.  Unless another place shall have been established by a resolution adopted by the Board of Directors, regular meetings of the Board shall be held at the principal office of the Corporation.  Special meetings of the Board shall be held at the place specified in the call thereof and in the notice thereof.

(d)      Quorum.  A majority of the Board of Directors shall constitute a quorum for the transaction of business at any meeting of the Board of Directors.  If at any meeting of the Board of Directors there shall be less than a quorum present, a majority of the directors present may adjourn the meeting from time to time without further notice.

(e)      Manner of Acting.  No corporate action shall be deemed to have been authorized by the Board of Directors unless the same shall have been approved by the consent or votes of a majority of the entire Board.

(f)      Informal Action.  Any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee.

Section 11.  Settlement Agreement.  Notwithstanding the provisions of Sections 3, 4, 5, 7 and 8 of this Article VI, until the election of directors in the third class of directors to be elected following the appointment of directors on February 16, 2006 (expected to occur at the November 2008 annual meeting of shareholders), the matters covered in Sections 3, 4, 5, 7 and 8 of this Article VI shall be controlled by the provisions of the Settlement Agreement dated February 9, 2006, among the Corporation and certain other parties.

## ARTICLE VII

## OFFICERS

Section 1.  Officers and Terms of Office.  The officers of the Corporation shall be a President, one or more Vice Presidents, a Secretary, an Assistant Secretary, a Treasurer, an Assistant Treasurer and such other officers as may from time to time be chosen by the Board of

Directors.  The offices of President and Treasurer or the offices of Secretary and Treasurer may be held respectively by one and the same person.  The offices of Secretary and Treasurer must each be held by a member of the Board of Directors.  All officers shall be elected annually by the Board of Directors at the first meeting of the Board of Directors held after each annual meeting of shareholders.  Each officer shall hold office until such officer's successor shall have been duly elected and shall have qualified or until his or her death, resignation or removal.  Any officer of the Corporation may be removed at any time by the affirmative vote of two-thirds (2/3) of the Board of Directors.  If any vacancy shall occur among the officers for any reason, such vacancy shall be filled by the Board of Directors.

**Section 2.   President.**   The President shall be the chief executive officer of the Corporation and shall supervise and control the business and affairs of the Corporation.  It shall be the duty of the President to preside at all meetings of the Board of Directors if no Chairman of the Board has been elected and at all meetings of the shareholders of the Corporation, and he shall see that all orders and resolutions of the Board of Directors are carried into effect.  The President may also execute all contracts, agreements, deeds, bonds, mortgages and other obligations and instruments in the name of the Corporation.  From time to time he shall report to the Board of Directors on such matters affecting the interest of the Corporation as are within his knowledge.  He shall also be an ex-officio non-voting Member of all committees appointed by the Board of Directors.  If there is no Membership Committee of the Board of Directors, it shall be the President's duty to review applications to become a Member of the Corporation and make recommendations to the Board of Directors regarding the approval or denial of such applications.

**Section 3.  Vice Presidents.**  The Vice Presidents shall be vested with all the powers, and required to perform all the duties of, the President in the event of the President's absence or in the event of the President's inability to act.  In the event that more than one Vice President shall have been elected by the Board of Directors, the order in which they shall be vested with the foregoing powers shall be designated by the Board of Directors.  Any Vice President elected by the Board of Directors shall also perform such other duties as may be prescribed for him by the Board of Directors.

**Section 4.   Secretary.**   The Secretary shall keep a record of the proceedings of the shareholders, of the Board of Directors and of all standing committees of the Board of Directors, in a book to be kept for that purpose.  He shall keep in safe custody the seal of the Corporation and when authorized by the Board of Directors to do so, he shall affix it to any instrument requiring same.  Such seal shall always be accompanied by the signature of the President, a Vice President or the Secretary.  The Secretary shall also perform such other duties as may pertain to his office or as the Board of Directors may require.  In the absence of the Secretary from any meeting of the shareholders or the Board of Directors or any committee, the record of the proceedings shall be kept and authenticated by such other person as may be appointed for that purpose at the meeting.  The Assistant Secretary shall assist the Secretary in the performance of the Secretary's duties hereunder.

**Section 5.   Treasurer.**   The Treasurer shall have charge of the funds and the disbursements of the Corporation.  He shall deposit all moneys, funds and other valuables in the name of the Corporation in such bank and such other depositories as may be designated by the

Board of Directors.  He shall disburse such funds as may be ordered by the other officers or Board of Directors of the Corporation and take proper vouchers therefor.  He shall render to the President and to the Board of Directors, whenever he or it shall require, an account of all his transactions as Treasurer.   At the annual meetings of the Board of Directors, and of the shareholders respectively, he shall make a report containing an account of all of his transactions as Treasurer and a full statement of the financial condition of the Corporation for the preceding fiscal year.  He shall keep full and accurate books of account.  If the Board of Directors shall so require, he shall give bond in such sum and with such sureties as the Board of Directors may deem necessary, conditioned upon the faithful performance of the duties of his office.  The Assistant Treasurer shall assist the Treasurer in the performance of the Treasurer's duties hereunder.

## ARTICLE VIII

## CORPORATE OBLIGATIONS AND FUNDS

**Section 1.  Contracts.**  Without the approval of the Board of Directors, the Corporation shall not enter into any agreement or incur any obligation involving capital expenditures in excess of $5 million or real estate.

**Section 2.  Deposit and Withdrawal of Funds.**  All checks, drafts and notes payable to the Corporation and all funds, moneys and other valuables of the Corporation shall be deposited in the name of the Corporation in such banks and such other depositories as the Board of Directors may designate.  All checks, drafts or orders for the payment of money shall be signed by the President, Secretary or Treasurer or by another person who has been authorized by the Board of Directors to do so.

**Section 3.  Loans.**  No loans shall be contracted on behalf of the Corporation where the Corporation is the debtor and no notes or other evidences of indebtedness shall be issued in the name of the Corporation as debtor unless authorized by resolution of the Board of Directors. Such authority may be general or confined to specific instances.

## ARTICLE IX

## INDEMNIFICATION

**Section 1.  Indemnification Generally.**  The Corporation shall indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or who is or was a director, officer, employee or agent of the Corporation, or who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding, if such person acted in good faith and in a manner

22

reasonably believed to be in, or not opposed to the best interests of the Corporation, its shareholders and its Members, and, with respect to any criminal action or proceeding, such person had no reasonable cause to believe the subject conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that a person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the Corporation, its shareholders and its Members, and with respect to any criminal action or proceeding, had reasonable cause to believe that the subject conduct was unlawful.

**Section 2.  Actions By or In the Right of the Corporation.**  The Corporation shall indemnify any person who was or is a party, or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit, if such person acted in good faith and in a manner reasonably believed to be in, or not opposed to the best interests of the Corporation, its shareholders and its Members, and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of duty to the Corporation, unless, and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.

**Section 3.  Expenses.**  To the extent that a director, officer, employee or agent of the Corporation has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding referred to in Sections 1 and 2 of this Article IX, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred in connection therewith.

**Section 4.  Determination Regarding Standard of Conduct.**  Any indemnification under Sections 1 and 2 of this Article IX (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case, upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because such person has met the applicable standard of conduct set forth in Sections 1 and 2 of this Article IX.  Such determination shall be made (a) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (b) if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (c) by the shareholders.

**Section 5.  Advancement of Expenses.**  Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding, as authorized by the Board of Directors in the

specific case, upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount, unless it shall ultimately be determined that such person is entitled to be indemnified by the Corporation as authorized in this Article IX.

**Section 6.  Rights Hereunder Not Exclusive.**  The indemnification provided by this Article IX shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any By-Law, agreement, vote of shareholders or disinterested directors, or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent, and shall inure to the benefit of the heirs, executors and administrators of such a person.

**Section 7.  Insurance.**  The Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against such person and incurred in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify against such liability under the provisions of this Article IX.

**Section 8.  Report to Shareholders.**  If the Corporation has paid indemnity or has advanced expenses to a director, officer, employee or agent, the Corporation shall report the indemnification or advance in writing to the shareholders with or before the notice of the next shareholders' meeting.

**Section 9.  Interpretation.**  The provisions of this Article IX shall be interpreted and applied in accordance with subsections 8.75(i) and (j) of the Illinois Business Corporation Act from time to time.

## ARTICLE X

### SEAL

The seal of the Corporation shall have inscribed thereon the name of the Corporation and the words, "Corporate Seal, Illinois."  The seal may be used by causing it or a facsimile of it to be impressed, affixed or reproduced in any manner.

## ARTICLE XI

### FISCAL YEAR

The fiscal year of the Corporation shall be fixed by resolution of the Board of Directors.

## ARTICLE XII

### RESERVES, PATRONAGE REBATES AND BUYING DEPOSIT REQUIREMENT

**Section 1.  Reserves.**  The Board of Directors may set aside reasonable reserves from time to time by resolution as it deems appropriate to provide for any contingencies or expected losses of the Corporation and as it otherwise deems to be in the best interests of the Corporation.

**Section 2.  Patronage Rebates.**  The Corporation shall distribute to qualifying Members and Patrons as Patronage Rebates all of the Corporation's Rebateable Net Income in excess of such reserves, payment of debts, capital improvements or additions, and working capital requirements as the Board of Directors may from time to time determine.  Such distributions shall be made in a manner based on Members' and Patrons' purchases from the Corporation's departments, in accordance with the provisions governing Patronage Rebates in the Rules and Regulations.  For purposes of determining a Member's purchases from the Corporation's departments, all purchases by Persons in the same Related Group as the Member shall be aggregated.  Distribution of Patronage Rebates from Rebateable Net Income of any fiscal year shall occur no later than eight and a half (8 ½) months following the end of the fiscal year.  It is intended that Patronage Rebates qualify as "patronage dividends" within the meaning of Section 1388(a) of the Internal Revenue Code of 1986, as amended.

**Section 3.  Qualification for Patronage Rebates.**  In order to qualify to participate in a distribution of Patronage Rebates with respect to any fiscal year, a Person must:

(a)  be a Member of record or Patron of record, and be in Good Standing, as of the Qualification Date (as hereinafter defined), and not have violated Section 9 of this Article XII; or

(b)  have terminated the Person's status as a Member or terminated the Person's purchasing relationship during such fiscal year, in either case in connection with a bona fide sale of all of the Person's Retail Locations or other termination of the Person's business, provided that upon the closing of such sale or upon such termination of business, the Person repaid all outstanding indebtedness owed to the Corporation by such Person.

If a Member is not in Good Standing on the Qualification Date or has terminated the Person's status as a Member or terminated the Person's purchasing relationship during such fiscal year but is still indebted to the Corporation, the Corporation shall provide the Member with written notice specifying why the Member is not in Good Standing or provide such former Member with written notice specifying the Person's indebtedness to the Corporation.  In the case of a Member not in Good Standing for a reason other than failure to pay amounts owed to the Corporation, if the Member has not corrected the default causing it not to be in Good Standing sixty (60) days after such written notice is provided, the Member shall not be entitled to receive any Patronage Rebate that the Member would otherwise be entitled to receive with respect to the preceding fiscal year.  In the case of a Member not in Good Standing for failure to pay amounts owed to the Corporation and in the case of a former Member that is indebted to the Corporation, the Corporation shall offset from the Patronage Rebate that the Member or former Member would otherwise be entitled to receive, the amount of indebtedness owed by the Member or former Member to the Corporation.  "Qualification Date" means the date fixed by the Board of Directors

as the qualifying date for participation in the distribution, unless the Board of Directors has not fixed such a date, in which case it means the last day of the fiscal year to which the Patronage Rebate relates.

**Section 4.  Forms of Payment of Patronage Rebates.**

(a)     Annual distributions of Patronage Rebates may be made in the form of cash, written notices of allocation of income and, in the case of Patronage Rebates to Members, Class B Shares, as determined by the Board of Directors, subject to the provisions of this Section 4.

(b)     At least twenty percent (20%) of the Patronage Rebate distributed to any Member or Patron for any fiscal year shall be in cash.

(c)     The Corporation shall pay at least ten percent (10%) of each fiscal year's Patronage Rebate payable to Members in the form of Class B Shares.  Beginning with the Patronage Rebates payable with respect to the fiscal year ended July 31, 2008, Class B Shares used in the payment of Patronage Rebates shall be valued at the Class B Purchase Price as of the end of the fiscal year to which the Patronage Rebate relates.  The Board of Directors may determine to pay more than ten percent (10%) of any fiscal year's Patronage Rebate payable to Members in the form of Class B Shares.  Notwithstanding the foregoing, any Member that was not in Good Standing during the last ninety (90) days of the fiscal year shall be provided with written notice by the Corporation specifying why the Member was not in Good Standing and, if sixty (60) days after being provided with such notice the Member is not in Good Standing, the Member shall receive cash or written notices of allocation in lieu of the Class B Shares the Member would otherwise receive as part of its Patronage Rebate.  Further, any Member that would otherwise receive such Class B Shares may elect to receive cash in lieu thereof by providing written notice of such election to the Corporation.

(d)     Each Person that applies for and is accepted as a Member or Patron after the effective date of these By-laws and each Member and Patron on such date that continues as a Member or Patron after such date, by such act alone, consents and agrees to include the amount of each written notice of allocation (as defined in Section 1388 of the Internal Revenue Code of 1986, as amended) that such Member or Patron receives from this Corporation as part of any Patronage Rebate, in the Member's or Patron's gross income at its stated dollar amount for federal income tax purposes in the manner required by Section 1385(a) of said Code in the taxable year in which such notice of allocation is received.

**Section 5.  Application of Patronage Rebates to Indebtedness Owed Corporation.**
Each Member and each Patron authorizes and directs that, prior to the distribution to such Member or Patron of any Patronage Rebates earned by such Member or Patron in any year in excess of the twenty percent (20%) minimum portion thereof required to be distributed in cash, there be deducted therefrom any past-due indebtedness of any nature owed at such time to the Corporation by such Member or Patron.  Each Member and each Patron grants the Corporation a perfected, first-priority security interest in all written notices of allocation held by such Member or Patron at any time, as security for the payment, from time to time and as often as may become due and payable, of any and all indebtedness of any nature payable to the Corporation by the Member or Patron.  Accordingly, each Member and each Patron authorizes the Corporation to

26

apply any such written notice of allocation held at any time by the Member or Patron against the amount of any past-due indebtedness owed at any time to the Corporation by such Member or Patron.  Further, each Member and each Patron agrees to execute all necessary documents needed at the time the indebtedness accrues, or subsequent thereto, to preserve the rights of the Corporation in the Rebateable Net Income of the Corporation that would otherwise be distributed to the Member as a Patronage Rebate.  The Corporation's lien pursuant to this Section 5 shall be conspicuously noted upon any document issued by the Corporation as a written notice of allocation.

**Section 6.   Reduction of Patronage Rebates in Proportion to Deficiencies in Buying Deposits.**  Notwithstanding any provision in these By-laws to the contrary, if the average daily ratio during a fiscal year of a Member or Patron's Buying Deposits to the Member or Patron's Buying Deposit Requirement is less than 1, the Patronage Rebate that the Member or Patron would otherwise be entitled to receive for such fiscal year shall be reduced to an amount equal to (a) the Patronage Rebate that the Member or Patron would otherwise be entitled to receive for such fiscal year, multiplied by (b) such average ratio.  The amount by which the Member or Patron's Patronage Rebate is thus reduced shall be treated as funds of the Corporation not available for distribution as a Patronage Rebate to any Member or Patron.  Each Member or Patron agrees that the actual amount of damages that the Corporation would suffer as a result of a shortfall in the Member or Patron's Cash Deposits as described in this Section 6 would be difficult or impossible to ascertain, and that, accordingly, in the event of any reduction in a Patronage Rebate of the Member or Patron pursuant to this Section 6, the amount of the reduction shall not be construed as a penalty but shall constitute liquidated damages paid by the Member or Patron to the Corporation.

**Section 7.   Special Provisions for Substantial Losses and Extraordinary Income or Expense Items.**  In determining Patronage Rebates and their allocation, the Board of Directors of the Corporation may in its discretion make such adjustments to Patronage Rebates as it may determine to be appropriate in the event the Corporation experiences a substantial loss from a patronage source or experiences income or expense attributable to extraordinary patronage items. The Board of Directors shall have power to determine when such a substantial loss or extraordinary patronage item has occurred, and its determination shall be conclusive.  Such substantial losses and extraordinary patronage items shall be allocated, insofar as is practicable, to the Members and Patrons of the Corporation during the period in which such gain or loss occurred or to which it is attributable and/or such substantial loss may be charged against any or all shares of stock (for any or all years) or Patronage Rebates or any selected classification thereof; provided, however, that the Board of Directors may allocate or treat such substantial loss or extraordinary patronage item in such manner as it, in its discretion, determines will provide equitable treatment to all Members and Patrons of the Corporation.  The application of this Section 7 shall be limited to gains and losses and items of income loss from patronage sources. Any gains or losses not determined by the Board to be substantial or extraordinary shall be charged to business operations for the year in which they were incurred.

**Section 8.   Cash Deposits; Buying Deposit Requirement.**  Each Member, Patron or Customer, upon becoming a Member, Patron or Customer, respectively, shall be required to deposit with the Corporation an amount fixed by the Rules and Regulations.  In addition, each Member, Patron or Customer shall maintain with the Corporation Buying Deposits in an amount

at least equal to the greater of (a) an amount fixed by the Rules and Regulations or (b) two (2) times such Person's average weekly purchases (such average determined over the preceding sixty (60) days) (such minimum amount of Buying Deposits being referred to in these By-laws as the "Buying Deposit Requirement"). The initial deposit with the Corporation made by a Member, Patron or Customer shall be credited toward such Person's Buying Deposit Requirement. The Corporation shall issue weekly statements to each Member, Patron or Customer evidencing such Member, Patron or Customer's Cash Deposits. The Corporation is hereby granted a perfected, first-priority security interest in the Cash Deposits of each Member, Patron or Customer, as security for the payment, from time to time and as often as may become due and payable, of any and all indebtedness of any nature payable to the Corporation by the Member, Patron or Customer.

**Section 9.   Termination of Purchasing.**  A Member or Patron shall forfeit the Member or Patron's right to Patronage Rebates (including Class B Share participation), refunds and any other amounts owed by the Corporation to the Member or Patron if the Member or Patron terminates its purchasing from the Corporation and concurrently therewith does not sell or close all of its Retail Locations, unless the Member or Patron complies with the terms of this Section 9. In order to avoid the aforementioned forfeiture, a Member or Patron desiring to terminate its purchasing from the Corporation without also selling or closing all of its Retail Locations at the time of such termination shall terminate its purchasing effective only at the end of a fiscal year and only by providing written notice of such termination to the Corporation no later than sixty (60) days before the end of such fiscal year.

**Section 10.   Determination of Cash Available for Dividends and Redemptions.**  At the regular Board of Directors meeting in December of each year, the Board of Directors shall determine the amount of cash available to the Corporation for use during the fiscal year then in progress in paying any dividends to be declared and in redeeming Class B Shares. If the amount determined by the Board of Directors to be available for such purposes is equal to the Default Dividend and Redemption Amount calculated as of the meeting date, the vote required to approve the determination shall be a simple majority. If the amount determined by the Board of Directors to be available is less than or more than the Default Dividend and Redemption Amount calculated as of the meeting date, the vote required to approve the determination shall be a two-thirds (2/3) majority. Unless otherwise determined by the Board of Directors at such meeting by a simple majority, twenty percent (20%) of the total amount determined to be available shall be available for paying any dividends to be declared and eighty percent (80%) of the total amount determined to be available shall be available for redemption of Class B Shares. The determinations of the Board of Directors pursuant to this Section 10 shall not affect Patronage Rebates for any year.

## ARTICLE XIII

## RULES AND REGULATIONS

The Board of Directors shall adopt, and may from time to time amend, Rules and Regulations with regard to transactions between the Corporation and its Members, Patrons and Customers. The Rules and Regulations shall set forth in a detailed manner such requirements as

shall be deemed by the Board of Directors to be reasonable with regard to such matters as maintenance of Cash Deposits, minimum weekly purchases, payment of bills, delinquent accounts, cartage charges and general and administrative charges assessed against Members, Patrons and Customers, and such other matters deemed appropriate by the Board of Directors that are not inconsistent with the Articles of Incorporation or these By-laws.

## ARTICLE XIV

## AMENDMENTS TO BY-LAWS

These By-laws may be amended, altered or repealed only by the affirmative vote of both (a) two-thirds (2/3) of the total votes that could be cast by the holders of all of the outstanding Class A Shares (as determined in accordance with the Corporation's Articles of Incorporation) and (b) two-thirds (2/3) of the outstanding Class B Shares, represented in person or by proxy at any annual or special meeting of the shareholders called for such purpose, provided that the notice for such meeting sets forth the proposed changes or additions to the By-laws.

## ARTICLE XV

## VIOLATIONS BY SHAREHOLDERS OF THE BY-LAWS

In the event that a shareholder of the Corporation violates any provision of these By-laws, the Corporation may provide written notice of such violation to the shareholder at the shareholder's address in the records of the Corporation.  If the Corporation has provided such notice and if the shareholder has not cured the violation within sixty (60) calendar days following the date notice was given, the Corporation shall be entitled to seek any equitable remedy available to it and to seek damages at law.  In addition to actual damages, the Corporation shall be entitled to recover its reasonable attorneys' fees and costs of collection. Further, the violating shareholder shall be deemed to have waived the shareholder's rights to accrued benefits under these By-laws, including, but not limited to, Patronage Rebates.  The legal and equitable remedies available under this Article XV shall not be construed as limiting, but, rather, as an addition to any other remedies set forth in specific sections of these By-laws.