# EXHIBIT D

# AMENDED AND RESTATED
# ARTICLES OF INCORPORATION

## OF

## CENTRAL GROCERS, INC.

These Amended and Restated Articles of Incorporation (the "Restated Articles") amend and restate the Articles of Incorporation of Central Grocers, Inc.  The corporation was incorporated on September 5, 1917 under the name Central Grocers Cooperative, Inc.  The corporation changed its name to Central Grocers, Inc. pursuant to Articles of Amendment effective July 31, 2000.

## ARTICLE I

## CORPORATE NAME

The name of the corporation is Central Grocers, Inc. (hereinafter, the "Corporation").

## ARTICLE II

## REGISTERED AGENT

The name of the Corporation's registered agent is Kerry M. Lavelle.  The Corporation's registered office is at 208 South LaSalle Street, Suite 1200, Chicago, Illinois 60604.

## ARTICLE III

## PURPOSE

The Corporation is organized for the benefit of its shareholders and its members.  In furtherance of their interests and objectives, the Corporation is organized for the following purposes:

(a)     to provide a purchasing organization for the retail grocers that are its members and to effect savings by bulk purchasing and distribute such savings to such retail grocers on a patronage percentage basis of purchases;

(b)     to actively engage in a retailer-owned organization, conducting and carrying on the business of manufacturing, packing, processing, distributing, buying, selling or trading, of food, grocery products, bakery goods, fruit, vegetables, produce, meats, poultry, game, food supplies, all articles of personal and household use, and anything appertaining thereto, for the benefit of the member retail grocers, and to effect such savings to reduce the cost of salable merchandise for the member retail grocers;

(c)     to engage in any activity in connection with the efficiency and economy, selling, producing, assembling, grading, handling, marketing, buying and selling of food and grocery products, etc., for its member retail grocers;

(d)     to enter into contracts, if deemed advisable, with stockholders or others, and to act as agent, representative or owner with reference to food and grocery products, etc., in the efficient and economical producing, assembling, grading, handling, shipping, marketing, buying and selling of the same, and to do anything that will reduce the cost of salable merchandise to the member retail grocers;

(e)     to establish and maintain a department, when deemed advisable for educational and publicity purposes, which department shall:

(i)     encourage improvement of business efficiency of retail grocery stores, and by making available to such concerns, when desired, business analysts, and such information as may be of value in this connection;

(ii)     establish and maintain, when deemed advisable, a research department for the purpose of assembling, analyzing and disseminating statistics and other information relative to the efficient economical cost for distribution to a consumer; and

(iii)     establish, secure, own and develop patents, trademarks and copyrights;

(f)     to actively engage in, conduct and carry on the business of the retail sale of grocery products, bakery goods, food, fruit, vegetables, produce, meats, poultry, fish, all articles of personal and household use and anything appertaining thereto;

(g)     to purchase or own stock in a subsidiary corporation actively engaged in, conducting or carrying on the business of the retail sale of grocery products, bakery goods, food, fruit, vegetables, produce, meats, poultry, fish, all articles of personal and household use and anything appertaining thereto; and

(h)     to purchase, acquire, develop or otherwise own real property.

ARTICLE IV

AUTHORIZED SHARES

1.     <u>Class A Shares and Class B Shares</u>.  The total number of shares of capital stock which the Corporation has authority to issue is 5,003,500 shares, consisting of 3,500 shares of Class A stock, $100 par value per share (the "Class A Shares"), and 5,000,000 shares of Class B stock, no par value per share (the "Class B Shares").  As of the date of filing of these Restated

Articles, the number of Class A Shares issued and outstanding is 450 and the number of Class B Shares issued and outstanding is 840,521.  The amount of paid-in capital of the Corporation as of the date of filing of these Restated Articles is $7,870,035.

2.     Qualification.

(a)     Class A Shares may only be issued to and owned by Members of the Corporation (as defined in the By-laws of the Corporation).  Each Member of the Corporation shall be required to own five (5) Class A Shares and the maximum number of Class A Shares that any Member of the Corporation may own is five (5).

(b)     Class B Shares may only be issued to Members of the Corporation (as defined in the By-laws of the Corporation) and, pursuant to any equity compensation plans approved from time to time by the Corporation's Board of Directors, to members of Corporation's management.

3.     Voting.

(a)     Except as otherwise provided by law or in this subsection 3(a), the holders of Class A Shares shall have exclusive voting rights over matters submitted to a vote of the shareholders of the Corporation and the holders of Class B Shares shall not be entitled to vote on any matter submitted to a vote of the shareholders of the Corporation.  The holders of Class A Shares and the holders of Class B Shares shall be entitled to vote as separate classes on (i) any merger, consolidation, share exchange or other business combination to which the Corporation is a party, the dissolution or liquidation of the Corporation, the sale of substantially all of the assets of the Corporation, and any sale of the capital stock or substantially all of the assets of any subsidiary of the Corporation, (ii) any amendment of these Articles of Incorporation, and (iii) any amendment of the Corporation's By-laws.

(b)     Any transaction described in clause (i) of the second sentence of subsection 3(a) may be effected only if (i) it is approved by a simple majority of the total votes that could be cast by the holders of all of the outstanding Class A Shares (as described in subsection (d)), (ii) it is approved by a simple majority of the outstanding Class B Shares, and (iii) no more than twenty percent (20%) of the outstanding Class B Shares are voted against the transaction.

(c)     Any amendment described in clause (ii) or (iii) of the second sentence of subsection 3(a) may be effected only if (i) it is approved by two-thirds (2/3) of the total votes that could be cast by the holders of all of the outstanding Class A Shares (as described in subsection (d)) and (ii) it is approved by two-thirds (2/3) of the outstanding Class B Shares.

(d)     In all votes of the Class A Shares:

(i)      Each holder of Class A Shares that is a Regular Member shall have, for each Class A Share held of record by the holder, one vote for each Retail Location that is owned by a member of the holder's Related Group; provided, each such holder of Class A Shares shall be entitled to cast at least one (1) vote for each Class A Share held by such holder; and provided, further, the maximum number of votes that may be cast by any such holder of Class A Shares shall be votes equal to five percent (5%) of the total number of votes eligible to be cast by all of the holders of the outstanding Class A Shares.

(ii)      Each holder of Class A Shares that is an Associate Member shall have, for each Class A Share held of record by the holder, one vote for each Retail Location that is owned by a member of the holder's Related Group and whose average weekly purchases from the Corporation during the Corporation's most recently ended fiscal year at the time of the vote exceeded $60,000 or such higher minimum amount as may be provided in the Corporation's Rules and Regulations; provided, the maximum number of votes that may be cast by any such holder of Class A Shares shall be votes equal to five percent (5%) of the total number of votes eligible to be cast by all of the holders of the outstanding Class A Shares.

(iii)      Fractional votes shall be counted.

The terms "Regular Member", "Retail Location", "Related Group", "Associate Member", and "Rules and Regulations", used in this subsection (d), have the meanings given to such terms in the By-laws of the Corporation.

(e)      In all votes of the Class B Shares, each holder of Class B Shares shall be entitled to cast one vote for each Class B Share held of record by the holder.  The holders of Class B Shares shall only be counted in determining whether a quorum is present at a meeting of shareholders if any of the matters upon which holders of Class B Shares are entitled to vote is to be voted upon by the shareholders at the meeting.

(f)      There shall be no cumulative voting rights, as that term is used in Section 7.40 of the Illinois Business Corporation Act of 1983, in any election of directors.

4.      Redemption.  Class A Shares and Class B Shares shall be redeemed by the Corporation in accordance with the provisions relating thereto in the Corporation's By-laws.

5.      Dividends.  No dividend may be paid on the Class A Shares.  Dividends may be paid on the Class B Shares as and when declared by the Corporation's Board of Directors.

6.      Liquidation.  Upon a dissolution or liquidation of the Corporation, after all of the Corporation's creditors have been paid the amounts to which they are legally entitled, any remaining assets of the Corporation shall first be paid ratably to the holders of the Class A Shares until such holders have received, in the aggregate, the aggregate par value of the

outstanding Class A Shares.   Thereafter, the assets of the Corporation legally available for distribution to the shareholders shall be paid ratably to the holders of Class B Shares.

7.   <u>Preemptive Rights</u>.   Except as set forth in the By-laws of the Corporation, no shareholder of the Corporation shall have any preemptive right to acquire any unissued or treasury shares, whether now or hereafter authorized.

ARTICLE V

DIRECTOR LIABILITY

Except to the extent that the Illinois Business Corporation Act of 1983 prohibits the elimination or limitation of liability of directors for breaches of fiduciary duty, no director of the Corporation shall be personally liable to the Corporation or its shareholders for monetary damages for any breach of fiduciary duty as a director, notwithstanding any provision of law imposing such liability.   No amendment to or repeal of this provision shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

FORM **BCA 10.30** (rev. Dec. 2003)
**ARTICLES OF AMENDMENT**
Business Corporation Act

Secretary of State
Department of Business Services
Springfield, IL  62756
217-782-1832
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.

_____ File # _____  Filing Fee: $50   Approved: _____ _____

– – – – **Submit in duplicate** – – – – **Type or Print clearly in black ink** – – – – **Do not write above this line** – – – –

1. Corporate Name (**See Note 1 on page 4.**):  CENTRAL GROCERS, INC.
_____

2. Manner of Adoption of Amendment:
The following amendment to the Articles of Incorporation was adopted on _____ , __**2015**__
in the manner indicated below:                                                            Month & Day                    Year

**Mark an "X" in one box only.**

☐ By a majority of the incorporators, provided no directors were named in the Articles of Incorporation and no direc-
tors have been elected. (**See Note 2 on page 4.**)

☐ By a majority of the board of directors, in accordance with Section 10.10, the Corporation having issued no shares
as of the time of adoption of this amendment. (**See Note 2 on page 4.**)

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but sharehold-
er action not being required for the adoption of the amendment. (**See Note 3 on page 4.**)

☑ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted
and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required
by statute and by the Articles of Incorporation were voted in favor of the amendment. (**See Note 4 on page 4.**)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less
than the minimum number of votes required by statute and by the Articles of Incorporation. Shareholders who have not
consented in writing have been given notice in accordance with Section 7.10. (**See Notes 4 and 5 on page 4.**)

☐ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopt-
ed and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote
on this amendment. (**See Note 5 on page 4.**)

3. Text of Amendment:
a. When amendment effects a name change, insert the New Corporate Name below. Use page 2 for all other amend-
ments.
Article I: Name of the Corporation: _____
                                                                                        New Name

**(All changes other than name include on page 2.)**

Page 1

Printed by authority of the State of Illinois. February 2008 - 5M - C 173.14

**Text of Amendment**

b. If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety.
**For more space, attach additional sheets of this size.**

ARTICLE EIGHT: The Corporation will have a perpetual duration.

4. The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows (If not applicable, insert "No change"):

No change.

5. a. The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital is as follows (If not applicable, insert "No change"):
(Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts.)

No change.

b. The amount of paid-in capital as changed by this amendment is as follows (if not applicable, insert "No change"):
(Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts.)
**(See Note 6 on page 4.)**

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital: | $ No change. | $ No change. |

**Complete either Item 6 or Item 7 below. All signatures must be in BLACK INK.**

6. The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated _____ , **2015**        CENTRAL GROCERS, INC.
              Month & Day              Year              Exact Name of Corporation

_____
Any Authorized Officer's Signature

TIM KUBIS, VICE PRESIDENT AND CFO
Name and Title (type or print)

7. If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, a majority of the directors, or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under penalties of perjury, that the facts stated herein are true and correct.

Dated _____ , _____
              Month & Day              Year

_____        _____

_____        _____

_____        _____

_____        _____

## NOTES AND INSTRUCTIONS

1. State the true exact corporate name as it appears on the records of the Office of the Secretary of State **BEFORE** any amendments herein reported.

2. Incorporators are permitted to adopt amendments **ONLY** before any shares have been issued and before any directors have been named or elected. **(§ 10.10)**

3. Directors may adopt amendments without shareholder approval in only seven instances, as follows:
   a. To remove the names and addresses of directors named in the Articles of Incorporation.
   b. To remove the name and address of the initial registered agent and registered office, provided a statement pursuant to §5.10 is also filed.
   c. To increase, decrease, create or eliminate the par value of the shares of any class, so long as no class or series of shares is adversely affected.
   d. To split the issued whole shares and unissued authorized shares by multiplying them by a whole number, so long as no class or series is adversely affected thereby.
   e. To change the corporate name by substituting the word "corporation," "incorporated," "company," "limited" or the abbreviation "corp.," "inc.," "co.," or "ltd." for a similar word or abbreviation in the name, or by adding a geographical attribution to the name.
   f. To reduce the authorized shares of any class pursuant to a cancellation statement filed in accordance with §9.05.
   g. To restate the Articles of Incorporation as currently amended. **(§10.15)**

4. All amendments not adopted under §10.10 or §10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

   Shareholder approval may be (1) by vote at a shareholders' meeting (either annual or special) or (2) by consent, in writing, without a meeting.

   To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least two-thirds of the outstanding shares entitled to vote on the amendment (but if class voting applies, then also at least a two-thirds vote within each class is required).

   The Articles of Incorporation may supersede the two-thirds vote requirement by specifying any smaller or larger vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies. **(§10.20)**

5. When shareholder approval is by consent, all shareholders must be given notice of the proposed amendment at least five days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment. **(§§7.10 & 10.20)**

6. In the event of an increase in paid-in capital, the corporation must pay all applicable franchise taxes, penalties and interest before this document can be accepted for filing.